UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NICOLE CASTAGNOZZI,<br><br>    Plaintiff,<br>  v.<br><br>TUFTS UNIVERSITY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Docket No.<br>)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) |

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. Plaintiff Nicole Castagnozzi—a fifth-year Ph.D. candidate in the Immunology Program at

   Defendant Tufts University's Sackler School of Graduate Biomedical Sciences—has been

   subjected to gender discrimination and a sexually hostile educational environment at Tufts.

   Following her complaints about these issues, Defendant Tufts, by and through its

   administrators, retaliated against her by making multiple unwarranted attempts to fail her

   from the program and preventing her from completing her Ph.D. requirements.  She has

   initiated the instant action to seek redress for the harm caused by Defendant Tufts'

   violations of Title IX of the Education Amendments Act of 1972 ("Title IX"), as well as its

   related obligations under state contract and tort law.

2. Ms. Castagnozzi has worked diligently since she entered the Immunology program,

   receiving all satisfactory grades and completing a publishable manuscript and a thesis that

   meets or exceeds the standards Tufts has applied to past students.  She was on track to

   obtain her Ph.D. in 2017 until she was abruptly removed from Professor David Thorley-

   Lawson's laboratory at the beginning of her fifth year for no valid reason and in violation of

Tufts' policies.  While she was in his laboratory, Dr. Thorley-Lawson subjected Ms. Castagnozzi to unwelcome physical touching and other sexual conduct, sexist comments about female scientists, and disparate treatment compared to her male counterparts (including, for example, by failing to mentor her, refusing to publish with her, screaming at her in at least one laboratory meeting, and making her do laboratory "housekeeping" tasks while respectfully working with male students and shielding them from menial tasks).

3.  Tufts administrators, including Dean of the Sackler School Naomi Rosenberg and Immunology Program Director Brigitte Huber (who, incidentally, is Dr. Thorley-Lawson's wife) were well aware that Dr. Thorley-Lawson had subjected other female students to such discriminatory and sexually hostile conduct, but did nothing to remedy it and, in fact, took steps to protect him from facing consequences for his behavior.

4.  When faced with Ms. Castagnozzi's complaint, Tufts, by and through its administrators, again acquiesced to Dr. Thorley-Lawson's conduct and punished Ms. Castagnozzi for filing an internal Title IX complaint by engaging in a concerted effort to retaliate against her, including by approving the unwarranted decision to remove her from the Thorley-Lawson laboratory, failing her in seminar courses for which there were no grounds to fail her, removing her from required courses, and derailing her attempts to publish her research.

5.  Defendant Tufts' actions violate its own policies and practices and are arbitrary and capricious decisions that have prevented Ms. Castagnozzi from obtaining her Ph.D. despite the fact that she has met all requirements for the degree and her dissertation meets or exceeds the standards Tufts has applied to prior students.

6.  Defendant Tufts' discriminatory and retaliatory treatment of Ms. Castagnozzi has impaired her ability to obtain her Ph.D. and advance her career in the sciences.  She has suffered

substantial damages as a direct and proximate result of Tufts' actions, including reputational harm, emotional distress, delayed or lost career opportunities, lost earnings potential, and other consequential damages.

## JURISDICTION AND VENUE

7. This action arises out of Tufts University's violations of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681), as well as its breach of contract and violation of state tort laws.

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

9. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

10. Plaintiff Nicole Castagnozzi resides in Wenham, Massachusetts. She is a Ph.D. candidate in the Immunology program at Tufts University's Sackler School of Graduate Biomedical Sciences ("Sackler School").

11. Defendant Tufts University ("Tufts") is a federally-funded private university in Medford, Massachusetts, with a total student body of approximately 11,700 students.

## FACTS

### Plaintiff's Academic History at the Sackler School

12. Plaintiff enrolled as a Ph.D. student at the Sackler School in the fall of 2012.

13. Between September 2012 and May 2013, Plaintiff completed her required four laboratory rotations.

14. For her academic work in her first year Plaintiff received a 3.1 GPA.

15. Plaintiff passed her required qualifying exams in June 2013.

16. By May 2014, Plaintiff had completed all of the basic coursework required for the Immunology Program Ph.D.

17. Plaintiff began to work in David Thorley-Lawson's laboratory on a project studying EBV encoded MicroRNAs. By 2015, her Thesis Advisory Committee (TAC) included three professors from the Sackler School:  Marta Gaglia, Linden Hu, and Alexander Poltorak.

18. At each biannual TAC meeting, Plaintiff and her TAC filled out a form detailing the work she had done and planned to do, and the committee's evaluation of Plaintiff's progress on each of 8 metrics and 4 essay questions. Plaintiff received a "satisfactory" grade on each of her TAC forms for the biannual meetings held in 2014, 2015, and 2016, including the last form she received in August 2016.

**Dr. Thorley-Lawson's Discrimination Against and Harassment of Plaintiff**

19. From the time she began working in his laboratory, Dr. Thorley-Lawson engaged in inappropriate behavior towards Plaintiff.

20. Dr. Thorley-Lawson repeatedly touched the small of Plaintiff's back when passing behind her through doorways and would sit extremely close to Plaintiff and touch her arm, which made her very uncomfortable.

21. On one occasion in the summer of 2015, when Plaintiff went to speak to Dr. Thorley-Lawson in his office, he began undressing in front of her, until he was bare-chested. When she gestured toward what he was doing and said she would come back later, he replied that she could stay. Plaintiff was extremely uncomfortable and quickly left his office. Dr. Thorley-Lawson repeatedly did the same thing to another female student in his laboratory who graduated while Plaintiff was in the laboratory.

22. Dr. Thorley-Lawson expressly stated his disdain for female graduate students.

23. In 2015, scientist Tim Hunt made public comments about "the trouble with girls" working in science laboratories. He stated, "Three things happen when they are in the lab: You fall in

4

love with them, they fall in love with you, and when you criticize them they cry." When Dr.

Hunt's comments were in the news, Dr. Thorley-Lawson told Plaintiff he agreed with those

comments. Dr. Thorley-Lawson stated that women cry more than men, and that it is

something about their wiring. When Plaintiff tried to dispute this stereotype, Dr. Thorley-

Lawson insisted he was correct that women were innately more emotional than men.

24. In the summer of 2016, Dr. Thorley-Lawson sat down next to Plaintiff's male colleague, and

while staring directly at the Plaintiff, said he did not like having women in his laboratory

because they "are not good."

25. On another occasion, Dr. Thorley-Lawson told Plaintiff that women create "too much

drama."

26. On multiple occasions, from the time she joined the lab, Dr. Thorley-Lawson told Plaintiff

and the other female student in the laboratory that they should not have personal

relationships. He also told Plaintiff that her marriage should suffer while she was in his

laboratory, and told the other female student that she was too young to be married. He never

made comments to the male students about their personal lives or relationships.

27. Dr. Thorley-Lawson encouraged Plaintiff and the other female student in the laboratory to

do the menial chores around the laboratory, and said the male students were too busy to be

bothered with such chores.

28. In violation of Sackler's Student Handbook policies, Dr. Thorley-Lawson asked Plaintiff to

do time-intensive personal favors for him that were not related to her training program or

professional development. He did not ask male students to do such favors for him. Upon

information and belief, Dr. Thorley-Lawson became extremely angry the one time Plaintiff

did not have time to do such a favor for him.

### Dr. Thorley-Lawson's Hostility Toward Plaintiff and
### Unreasonable Decision to Remove Her From His Laboratory

29. In 2015, after she made clear that she was not interested in his physical advances, Dr. Thorley-Lawson became hostile to Plaintiff.

30. Dr. Thorley-Lawson expressed his dislike for Plaintiff in gendered terms, calling her "stubborn," and "passive aggressive." He called the other female student who overlapped in the laboratory with Plaintiff "emotional."

31. In a laboratory meeting on July 28, 2016, when Plaintiff was trying to explain certain experiments she had conducted, Dr. Thorley-Lawson became enraged and began screaming at Plaintiff in front of her lab mates. He then went out of town for a number of weeks.

32. In preparation for her scheduled August 2016 TAC meeting, Plaintiff met with two of the members of her TAC in private meetings. She discussed her work with them. In those meetings each professor agreed with Plaintiff that she was on track to be granted permission to defend her thesis sometime between November 2016-January 2017, which would mean the thesis defense would have occurred between February-April 2017.

33. In August 2016, Plaintiff sent Dr. Thorley-Lawson a draft manuscript for an article she was preparing to publish with him, as well as her 30-page committee report that was to be presented to her TAC at its scheduled August 18, 2016 meeting. Dr. Thorley-Lawson never provided any response or feedback to Plaintiff about her work.

34. On August 17, 2016, Dr. Thorley-Lawson informed Plaintiff he was not going to attend her August 18, 2016 meeting. Pursuant to the Sackler School Immunology Program Guide, all members of the TAC (which includes the student's advisor) must be at the end of third laboratory year TAC meeting.

35. Plaintiff attended her August 18, 2016 TAC meeting. The TAC members expressed frustration with Dr. Thorley-Lawson for not attending the meeting.

36. At the meeting, one of the members of the TAC gave Plaintiff some suggestions of small experiments she could do to strengthen her manuscript. No member of the TAC expressed any concerns about Plaintiff's progress in her work, or her ability to gain permission to defend her thesis in the November 2016-January 2017 time frame two of them had previously discussed with Plaintiff.

37. On August 25, 2016, Plaintiff met with Dr. Thorley-Lawson. She asked him if he would like to hear how the TAC meeting had gone; he said he would not. Dr. Thorley-Lawson then told Plaintiff he was "disengaging" from her work. When she asked if it was for personal or scientific reasons he stated it was "personal." He also told her he would not publish her manuscript with her, again for personal reasons.

38. On August 29, 2016, Plaintiff met with Dean Naomi Rosenberg. She told Dean Rosenberg that Dr. Thorley-Lawson had removed her from his lab for "personal" reasons. Dean Rosenberg responded that she hoped Dr. Thorley-Lawson would change his mind, and that he is a person who changes his mind a lot. She offered no other advice or resources to Plaintiff as to what she could do to address the situation.

39. On August 30, 2016, Plaintiff asked her TAC chair, Dr. Alexander Poltorak, to provide her with the written TAC form that the student and committee are supposed to fill out at each meeting. Based on Tufts' policies and practices, the student and TAC are supposed to jointly fill out the form at the meeting, and the TAC is supposed to provide the final version of the form to the student before it is filed with the administration.

40. On September 6, 2016, Dr. Poltorak responded to Plaintiff and refused to provide Plaintiff with the TAC form, and stated he had already submitted it to the administration.

41. On September 7, 2016 Plaintiff retrieved the TAC form from the Sackler Student Services Coordinator. In sharp contrast to her previous reports, Plaintiff was given a "does not meet" expectations on three of the eight metrics of progress listed on the report. Her TAC had not raised any concerns about those areas with her in the August 18, 2016 meeting.

42. The TAC form also contained nearly a page of written comments that Plaintiff had never previously seen, including laundry list of experiments and research the TAC indicated she was to do by her next meeting, which the TAC recommended be held in October 2016. Only one of the suggestions on the TAC form had ever previously been mentioned to her, and Plaintiff had completed the suggested experiments shortly after the TAC meeting. Other items on the list had already been completed by Plaintiff before the TAC meeting, and were included in the report she had provided the TAC before the meeting.

43. Despite the "does not meet" expectations and extensive commentary, which she had not been given prior notice of, Plaintiff's progress was nonetheless deemed to be "satisfactory" by the TAC, which, under the Immunology Program Guide, means that the committee "is confident that the project will lead to successful completion of the dissertation research."

44. At a meeting with one of her TAC members in January 2017, Plaintiff raised her concern that the TAC form she received did not at all reflect the comments the TAC had given her during the August 18, 2016 meeting. He responded that after talking to Dr. Thorley-Lawson they had to take his concerns into account, and agreed that Dr. Thorley-Lawson influenced the TAC form.

45. Plaintiff has done more than ample research to obtain permission to defend her thesis and receive her Ph.D.  On April 10, 2017, Dr. Thorley-Lawson approached Plaintiff and told her that to graduate she would need to complete two specific experiments, which she had previously completed and of which she had repeatedly notified her TAC committee, Dean Lange, and Defendant Tufts.

### Plaintiff's Internal Discrimination Complaint Against Tufts, and Tufts' Failure to Prevent Further Interruption to Plaintiff's Educational Progress

46. On September 9, 2016, Plaintiff met with Dean Rosenberg and Kathryn Lange, Associate Dean of the Sackler School.

47. Plaintiff reported to these administrators that Dr. Thorley-Lawson had said he was "disengaging" from her for "personal" reasons, and that she believed his actions to be motivated by sex discrimination.

48. Dean Rosenberg stated that Plaintiff was no longer permitted to work in Dr. Thorley-Lawson's laboratory. She told Plaintiff she could either leave the Sackler School with a Masters degree, or try to find a new lab in which to start a different Ph.D. project from scratch. She told Plaintiff to take a few weeks away from campus to think about those options. When Plaintiff asked if she was expected to attend her weekly seminars while she was considering her options, Dean Rosenberg told her she was not.

49. On September 21, 2016, Plaintiff filed a formal complaint of sex discrimination with Tufts' Office of Equal Opportunity (OEO). A Tufts employee, Jennifer Magrone, was assigned to investigate Plaintiff's complaint. Shortly thereafter, Tufts hired an external investigator, Edward Mitnick, to investigate Plaintiff's complaint.

50. On September 30, 2016, Ms. Magrone informed Plaintiff that she was no longer required to choose between leaving with a Masters and starting a new project in another lab. Instead,

she was told that Tufts would implement interim measures to ensure that she was not further deprived of access to her education pending the discrimination investigation. To date, Tufts has not provided any such measures that would enable her to publish her manuscript or obtain permission to defend her thesis on the time table agreed to by her TAC.

51. On October 2, 2016, Plaintiff asked Magrone if she was permitted to resume attending her Graduate Seminar and Research Presentations classes. On October 3, 2016, Magrone replied that she was. Plaintiff resumed attending those classes.

52. On October 14, 2016, Plaintiff asked Ms. Magrone if there was a way she could take her research to another lab, to finish the project she was working on. On October 18, 2016, Ms. Magrone told her that Dean Rosenberg had decided Plaintiff could not take her work to another lab.

53. Between October 14, 2016 and November 3, 2016, Plaintiff made multiple suggestions to have a neutral evaluator outside of the Sackler School review the TAC form and determine what items were reasonable and necessary to obtain permission to defend her thesis.

54. On December 9, 2016, Magrone informed Plaintiff that Rosenberg rejected Plaintiff's suggestion of having a neutral evaluation of the work to determine what work needed to be done on Plaintiff's Ph.D.  Magrone stated: "The Sackler School has no precedent for engaging with an individual who is not a current Sackler faculty member to assess the work that would be necessary for a PhD candidate to proceed to a thesis defense leading to a PhD granted by Sackler."

55. In fact, Sackler students are required to have a person from outside of Tufts sit on their thesis defense committees, and participate in the Ph.D. decisions.

56. Sackler also routinely permits its students to have TAC members who are not from Tufts.

57. On December 14, 2016, Plaintiff reached out to Ms. Magrone and proposed yet another alternative path forward for her to continue working towards obtaining her Ph.D.  Plaintiff proposed that the Sackler School give her permission to defend her thesis so that she could begin writing the thesis, and that the school help her identify another scientist who could help edit and co-author her manuscript.  Defendant Tufts subsequently denied this proposal.

58. In denying this proposal, Dean Lange repeatedly told Plaintiff that the decision of whether a student is ready to defend a thesis is entirely up to the TAC.  As a result, Plaintiff has tried to find a path forward for her work by speaking with members of her TAC.

59. On January 10, 2017, she spoke with one TAC member, Linden Hu, and asked if he could give her concrete tasks that the TAC though she needed to do before she would have permission to defend her thesis. Hu said he could not remember her work.

60. Plaintiff told Hu she did not think it was feasible for her to go back to Dr. Thorley-Lawson's lab, and asked if he thought there was any other work she could do, such as a library research component, that would satisfy the TAC committee that she had done sufficient work to graduate. Hu said he would talk to the other members of the TAC, as well as Deans Lange and Rosenberg, and the head of the Immunology Department, Brigitte Huber (Dr. Thorley-Lawson's wife).

61. Hu encouraged Plaintiff not to pursue her Ph.D., and instead to leave with a Masters degree. He told her if she took a Masters she could preserve relationships at the school and leave with no marks on her record.

62. On January 11, 2017, Plaintiff met with another member of her TAC, Marta Gaglia, and had a similar conversation.

63. On January 13, 2017, Plaintiff sent Hu and Gaglia an outline of her thesis she had drafted, and asked them to consider it.

64. On January 17, 2017, Hu emailed Plaintiff and said "[w]e checked to see whether a writing or library research based component to the thesis in lieu of laboratory work is possible, but were told that it is not." Neither Hu nor Gaglia responded substantively to Plaintiff's thesis outline, or indicated they had reviewed it.

65. On February 18, 2017, Plaintiff received a letter from Jill Zellmer, the Executive Director of Tufts' Office of Equal Opportunity, stating that the investigator in her case had not found sufficient evidence to support Plaintiff's claims.

66. Tufts' Complaint Resolution Guidelines state that when an investigation is completed the investigator will provide his or her conclusions to the parties, and the parties will have an opportunity to respond. Plaintiff was never provided with the investigator's conclusions.

67. On February 24, 2017, Plaintiff submitted a response to the letter, and requested that she be provided with the report Mitnick had submitted to Tufts, in order to respond more fully to the investigation and its conclusions.

68. To date, Plaintiff has not been provided with Mitnick's conclusions.

69. As of the date of this filing, the investigation into Plaintiff's discrimination claims has been open for 201 days.

70. At no time has anyone at the Sackler School provided Plaintiff with any way to complete her Ph.D. project other than to continue to be overseen by her harasser, against whom she has an open sexual harassment and discrimination claim, and to complete the list of tasks he added to her TAC form after he decided to disengage with her for "personal" reasons.

## Defendant Tufts' Retaliation Against Plaintiff

71. On November 8, 2016, Ms. Magrone informed Plaintiff that she was required to meet with Dean Lange in order to complete the program's Graduate Research course. Dean Lange is an administrator, not a scientist, and does not have the training or background to give substantive guidance on scientific projects.

72. Per the Immunology Program Guide, the Graduate Research course simply provides a grade to demonstrate that a student has had, and passed, the required TAC meeting each spring and fall.

73. Because Plaintiff's advisor had removed her from his laboratory and refused to work with her, she no longer had a functioning TAC or project about which to meet.

74. Dean Lange was unable to meet with Plaintiff until December 8, 2016, 13 days before the end of the fall semester.

75. On December 2, 2016, Dean Lange sent Plaintiff an email outlining the purpose of the meeting. She told Plaintiff she would have to identify academic research goals on which to work. She stated: "Goals may include working on a manuscript if data are available, creating an outline and writing a draft of the thesis, reading current journal articles related to the thesis project, planning experiments that might be conducted in the future, and similar activities that directly contribute towards the thesis process."

76. At the December 8, 2016 meeting, Dean Lange told Plaintiff she was in danger of failing Graduate Research. She instructed Plaintiff to send her a list of research goals by their next meeting, scheduled for December 19, 2016.

77. On December 19, 2016, Plaintiff provided Dean Lange with a list of research goals. The first was to find a faculty member who could help her edit her manuscript and get it published.

13

Lange told her that publishing her manuscript (a loose "requirement" of obtaining an Immunology Ph.D. at Sackler), was not an appropriate research goal.

78. The second goal Plaintiff listed was obtaining permission to defend her thesis, so that she could begin writing it. Dean Lange said obtaining permission to defend the thesis was not an appropriate research goal.

79. The only goal Lange would identify as appropriate in that meeting was having Plaintiff edit her manuscript, which she had already edited in response to feedback she received at the August TAC meeting.

80. In that meeting, Lange also told Plaintiff that beginning in January 2017, she was required to be physically present on campus for eight hours every day. Plaintiff did not have an office or laboratory to work in, and students who were writing their theses were not required to be on campus. Dean Lange nonetheless required Plaintiff to identify an eight-hour time slot every day, and sit in the library for that time period every Monday through Friday.

81. Dean Lange also encouraged Plaintiff to take a leave of absence from the school.

82. Dean Lange instructed Plaintiff to send her a list of additional research goals by December 22, 2016.

83. On December 22, 2016, Plaintiff emailed Dean Lange regarding her research goals, including a literature review on topics related to her thesis, as Lange had initially suggested in her December 2, 2016 email.

84. On January 3, 2017, Plaintiff emailed Dean Lange a draft of her manuscript showing the work she had done on it between August 2016 and January 2017.

85. In their January 4, 2017 meeting, Dean Lange told Plaintiff she knew about her "investigation and lawsuit." Plaintiff was surprised that Dean Lange would bring up the

confidential OEO investigation, particularly because the Sackler School's registrar was sitting in on the meeting, and that someone had (falsely) told Dean Lange that Plaintiff had filed a lawsuit.

86. On January 4, 2017, Dean Lange told Plaintiff that she had not done sufficient work on her manuscript to merit a passing grade for Graduate Research for the fall 2016 semester, and she would be given an incomplete. Dean Lange told Plaintiff that the only way she would not fail Graduate Research was if she spent the next month proving to Lange that she was "very serious" about her work and by making significant progress on her work. Dean Lange provided no concrete information about what work Plaintiff would need to do to prove her seriousness to Lange.

87. Beth Storrs, the Registrar, who sat in on every meeting Plaintiff had with Lange, told Plaintiff if she would take a leave of absence it would "stop the clock" on the incomplete and she would not be at risk of failing Graduate Research in the upcoming month.

88. Also on January 4, 2017, Dean Lange told Plaintiff that conducting a literature review of articles related to her thesis was not an appropriate research goal, despite the fact that Dean Lange suggested it.

89. In the January 4, 2017 meeting, Dean Lange repeatedly suggested to Plaintiff that she begin writing her thesis, despite not having permission from her TAC to do so. Despite Plaintiff's repeated requests for guidance as to appropriate research topics, Lange would not provide any alternative research goal for Plaintiff other than writing her thesis.

90. In that meeting, Dean Lange also told Plaintiff that the hours she had chosen to be on campus (12pm-8pm, in order to avoid traffic on her hour-long commute to and from the

city) were not acceptable. Lange increased Plaintiff's required hours to eight-and-a-half hours per day, and told her the hours had to be between 7am-7pm.

91.  After the January 4, 2017 meeting with Dean Lange, Plaintiff agreed to write her thesis because Lange had made clear that was the only way she was going to be given a passing grade in Graduate Research. Prior to each meeting between January 24, 2017, and April 6, 2017, Plaintiff sent Lange the sections of her thesis she had drafted in the previous two weeks. At each meeting, Lange offered Plaintiff advice on formatting her thesis—such as what font and line spacing to use—but provided no feedback on substance.

92.  On January 6, 2017, Plaintiff reviewed her transcript and learned that she had been failed in both her Graduate Seminar and Research Presentations Seminar for Fall 2016. Pursuant to the Program Guide, if a student receives two failing grades she is automatically expelled from the school.

93.  Plaintiff immediately found the student representative in charge of taking attendance at those seminars, and asked to see the attendance chart. She was marked absent on six days over the two seminars. One was a day she had been at the seminar. Another day she had sent in a note saying she was sick, which would have made the absence excused. The chart failed to include one of the days that there had been a seminar, in which she had been in attendance. Numerous other students had four or five absences, but to her knowledge had not failed the seminars.

94.  Plaintiff was, in fact, only absent for two sessions of Research Presentations and three sessions of Graduate Seminar. All of those absences were excused. One session of Research Presentations and two sessions of Graduate Seminar were in the three-week period in September 2016 when Dean Rosenberg had told her to take time away from campus to

decide if she was leaving the school or starting over in a new lab. The other two were dates on which Plaintiff was sick, and had sent in a note to the student representatives.

95. On January 7, 2017, Plaintiff again checked her transcript and saw that she was still marked as failing Research Presentations, but was now marked as passing Graduate Seminar.

96. On January 17, 2017, Plaintiff again checked her transcript. She saw that she was then marked as passing Research Presentations, and failing Graduate Seminar.

97. On February 7, 2017, Plaintiff submitted an appeal of her failing grade in Graduate Seminar to Dean Rosenberg. She explained that not only was there no clear attendance policy for that class, but that Dean Rosenberg had explicitly excused her from attendance for three weeks in September. On February 8, 2017, Dean Rosenberg granted the appeal and Plaintiff's transcript was changed to reflect that she had passed both classes.

98. On February 15, 2017, all of the Immunology students received an email about a two-day "R-workshop" class they were required to attend on March 30-31, 2017. They were told that they were all being enrolled, and if they could not attend they needed to provide the program coordinator with a legitimate reason.

99. Plaintiff never received any other emails about that workshop.

100. On March 28, 2017, Plaintiff reached out to the Immunology Program Coordinator to ask if the workshop was still being held, and where and when it was going to be. The Program Coordinator responded that Dr. Huber had told the coordinator that Plaintiff was not to attend the program.

101. On March 29, 2017, Plaintiff emailed Dr. Huber to ask her if she was, in fact, not registered for the program. Dr. Huber never responded to Plaintiff. Plaintiff therefore was not able to attend the workshop with the rest of her classmates.

102. On April 6, 2017, Plaintiff submitted a complete draft of her thesis to Dean Lange.

## Plaintiff's Internal Retaliation Complaint

103. On December 14, 2016, Plaintiff discussed with Ms. Magrone her concerns about the school's failure to allow her to continue her education, and the onerous and arbitrary requirements being placed on her by Lange.

104. On December 20, 2016, Plaintiff's counsel raised her retaliation concerns in a letter to Tufts' counsel.

105. On January 9, 2017, Ms. Magrone told Plaintiff she understood that she had concerns that she was being retaliated against, but did not say the school would take any steps to address that concern.

106. After that conversation, Plaintiff sent Ms. Magrone an email repeating her concerns about retaliation.

107. On January 25, 2017, Ms. Magrone notified Plaintiff that Tufts had retained Elizabeth Sanghavi to conduct an investigation into her complaints of retaliation.

108. To date, that investigation remains open and there is no set timeframe in which it is to be concluded.

109. On April 6, 2017, nine days after Plaintiff notified Defendant Tufts that she intended to file the instant complaint in federal court, Defendant Tufts indicated that it would force Plaintiff to take a leave of absence without pay and withdraw her from the program at the end of the semester should she not agree to resolve this matter on terms proposed by Defendant Tufts. These actions, if taken, would violate Defendant Tufts' policies and procedures and would be retaliatory.

**Dr. Thorley-Lawson's History of Sexual Harassment Against His Female Students, and Defendant Tufts' Disregard of Sexual and Gender-Based Harassment**

110. Upon information and belief, for many years Defendant Tufts has had a practice of ignoring its male faculty members' discrimination against, and inappropriate conduct with, female students, particularly the behavior of Dr. Thorley-Lawson.

111. In or around 2008, Dr. Thorley-Lawson engaged in a sexual relationship with FEMALE STUDENT #1, in violation of Tufts' Policy on Consensual Relationships.

112. Upon information and belief, Professor Huber, the Program Director of the Immunology Program (and Dr. Thorley-Lawson's wife), knew about Dr. Thorley-Lawson's violation of the Policy on Consensual Relationships, and many other students and faculty were also aware of the relationship.

113. Upon information and belief, Defendant Tufts permitted FEMALE STUDENT #1 to leave the Sackler School before completing her Ph.D. in order to take a job in another state.

114. Upon information and belief, Defendant Tufts allowed FEMALE STUDENT #1 to write her thesis while living and working in another state.

115. Defendant Tufts permitted FEMALE STUDENT #1 to graduate without having a TAC committee.

116. Defendant Tufts permitted FEMALE STUDENT #1 to graduate with a thesis that was shorter in length than many Sackler School Masters theses, and substantially shorter than what is normally required for a Ph.D. thesis.

117. FEMALE STUDENT #1's thesis is not available to the public either in the online database that houses all other Sackler Ph.D. theses, or at the Sackler School library. Upon information and belief, no other Sackler Ph.D. thesis has been made permanently inaccessible to members of the Sackler community.

118. Upon information and belief, in or around 2008, when FEMALE STUDENT #2 in Dr.
Thorley-Lawson's laboratory protested his preferential treatment for the student with whom
he had a sexual relationship, he began to exhibit extremely hostile behavior towards her,
including screaming at her and taking adverse actions against her.

119. For example, upon information and belief, in 2011, when FEMALE STUDENT #2 was a
post-doctoral fellow in his laboratory, Dr. Thorley-Lawson put a junior, male student's name
as first-author on FEMALE STUDENT #2's article, stripping her of the recognition she
should have obtained as the lead scientist who did the work the paper was reporting. Upon
information and belief, the male student had only helped on the article, and only as an
assistant to FEMALE STUDENT #2.

120. Upon information and belief, despite having knowledge of Dr. Thorley-Lawson's violation
of the Consensual Relationship Policy, Defendant Tufts never took any action to discipline
Dr. Thorley-Lawson.

121. Upon information and belief, Defendant Tufts never took any action to investigate and/or
discipline Dr. Thorley-Lawson for engaging in relationship where he gave preferential
treatment to FEMALE STUDENT #1.

122. Upon information and belief, Defendant Tufts never took any action to investigate whether
Dr. Thorley-Lawson had created a hostile environment for other women in his laboratory by
engaging in a quid pro quo sexual relationship FEMALE STUDENT #1.

123. In 2014, Plaintiff spoke to Lange about her concerns that women in another male professor's
laboratory were not being treated as equal to the male students.

124. Lange responded that she knew that female students had problems in that laboratory, and said that to address the situation she would consider no longer allowing female students the opportunity to work in that laboratory.

125. Upon information and belief, at that time no investigation was opened into the allegations of sex discrimination in that laboratory, and the professor's behavior towards female students was not addressed with him.

126. The Sackler School administration continued to place female graduate students into that laboratory, despite Lange admitting that women in that laboratory were not treated appropriately.

127. In 2014, Dr. Thorley-Lawson told FEMALE STUDENT #3 in his laboratory that he was "disengaging" with her work as she neared completion of her Ph.D., and refused to attend her TAC meetings or work with her.

128. As he did with Plaintiff, Dr. Thorley-Lawson generated a long list of work he had never before mentioned, which he said he required FEMALE STUDENT #3 to do before he would consider granting her her Ph.D.

129. Upon information and belief, it was only because the members of that student's TAC committee were willing to confront Dr. Thorley-Lawson and advocate for FEMALE STUDENT #3 that she was able—after doing substantial additional work that had never been part of her thesis—to graduate.

130. Upon information and belief, the administration took no steps to address Dr. Thorley-Lawson's discriminatory and unprofessional conduct toward FEMALE STUDENT #3.

131. Defendant Tufts, by and through its administrators, has had ample notice of Dr. Thorley-Lawson's harassment and mistreatment of his female students, and has exhibited deliberate indifference to his actions.

132. As a result of Defendant Tufts' actions, Plaintiff has been and continues to be deprived of her educational opportunities, including the ability to publish her manuscript, obtain permission to defend her thesis, and obtain her Ph.D.

133. Defendant Tufts' actions have caused and continue to cause Plaintiff significant damages, including humiliation, emotional distress, reputational harm, delayed or lost career opportunities, lost future wages, attorneys fees, and other compensatory damages.

### COUNT I
### Violation of Title IX – Gender Discrimination

134. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

135. Defendant Tufts is a recipient of federal funding, and is thus subject to Title IX of the Education Amendments of 1972.

136. Pursuant to Title IX, Defendant Tufts is prohibited from discriminating against its students on the basis of their sex.

137. As a graduate student in Defendant Tufts Sackler School of Graduate Biomedical Studies, Plaintiff is a full-time student in the Ph.D. program in immunology and also receives an annual stipend to be a research assistant.

138. Plaintiff has been subjected to discrimination on the basis of her sex at Defendants Tufts.

139. Plaintiff is a qualified student who has completed all the pre-requisites to obtain a Ph.D. and has written a publishable manuscript and a thesis that meets or exceeds the standards Defendant Tufts has applied for other students.

140. Plaintiff has suffered adverse actions that have impaired her educational opportunities at Tufts, including but not limited to Defendant Tufts approval of Dr. Thorley-Lawson's unwarranted decisions to remove her from his laboratory and refuse to publish with her, which have prevented her from obtaining permission to defend her thesis and earn her Ph.D.

141. Defendant Tufts, by and through Dr. Thorley-Lawson's discriminatory actions, took these adverse actions against Plaintiff because of her sex.

142. Defendant Tufts also was on notice of the discriminatory practices of male faculty members (including Dr. Thorley-Lawson) and on specific notice of Plaintiff's complaint of discrimination in September 2016, yet has failed to effectively remedy the discrimination in deliberate indifference to Plaintiff's rights.

143. These actions constitute gender discrimination against Plaintiff in violation of Title IX of the Education Amendments Act of 1972.

144. Plaintiff has suffered damages as a result.

## COUNT II
### Violation of Title IX – Sexual Harassment and Hostile Educational Environment

145. Plaintiff repeats and realleges the allegations above as if fully set forth herein

146. Pursuant to Title IX, Tufts is prohibited from discriminating against its students on the basis of their sex, including by permitting its faculty to engage in sexual harassment of its students.

147. Plaintiff was subjected to pervasive and severe sexual harassment that was offensive and unwelcome while she was a graduate research assistant in Dr. Thorley-Lawson's laboratory at Defendant Tufts.

148. This harassment included but is not limited to Dr. Thorley-Lawson's unwelcome touching of Plaintiff, his undressing in front of her, his sexist comments about female scientists and

Plaintiff specifically, his screaming at her during at a lab meeting, his preferential treatment of similarly situated male students, and his retaliatory behavior.

149. Defendant Tufts had repeated notice of the sexual harassment when Plaintiff complained to Dean Rosenberg in September 2016 and subsequently filed a formal internal complaint.

150. Defendant Tufts also had notice of Dr. Thorley-Lawson's treatment of prior female students in his laboratory, including his preferential treatment of one female student with whom he had sexual relationship in violation of Tufts' policy and, upon information and belief, his unfair treatment of other female students who had not engaged in his sexual overtures.

151. Defendant Tufts failed to remedy the sexually hostile educational environment to which Plaintiff was exposed even after having notice of the sexual harassment of Plaintiff.

152. Defendant Tufts failure to promptly and adequately remedy the sexual harassment and sexually hostile educational environment was deliberately indifferent to Plaintiff's rights.

153. These actions consistent sexual harassment against Plaintiff under Title IX of the Educational Amendments Act of 1972.

154. Plaintiff has suffered damages as a result.

## COUNT III
## Violation of Title IX – Retaliation

155. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

156. Pursuant to Title IX, Tufts is prohibited from retaliating against a student who makes a complaint of sex discrimination at Tufts.

157. Plaintiff engaged in protected activity by complaining to Dean Rosenberg on September 9, 2016 that Dr. Thorley-Lawson's actions constituted gender discrimination, and then on September 21, 2016 by filing a complaint of discrimination with Defendant Tufts.

158. Following Plaintiff's complaints, Defendant Tufts, by and through its administrators, including Dean Rosenberg, Associate Dean Lange, and Program Director Hubler, engaged in a concerted effort to retaliate against her by approving Dr. Thorley-Lawson's unwarranted decisions to remove her from his laboratory, imposing unfairly burdensome academic requirements on her, giving her unsatisfactory grades in seminars without any grounds, removing her from required courses, and preventing her from publishing her manuscript.

159. These actions have impaired Plaintiff's educational opportunities at Tufts and prevented her from obtaining permission to defend her thesis and earn her Ph.D.

160. Defendant Tufts' motives for these actions was to fail Plaintiff to retaliate against her because she filed an internal complaint of discrimination.

161. These adverse actions taken by Defendant Tufts constitute retaliation against Plaintiff in violation of Title IX of the Education Amendments Act of 1972.

162. Plaintiff has suffered damages as a result.

## COUNT IV
## Breach of Contract

163. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

164. Plaintiff contracted with Tufts University to provide her with access to its Ph.D. degree program.  The contract between Plaintiff and Defendant Tufts is comprised of Tufts' handbooks, manuals, and other documents, including but not limited to the Sackler School's Catalog, Program Guide, and Student Handbook, and Tufts' University's Non-Discrimination Policy, Sexual Misconduct Policy, and Complaint Resolution Guidelines.

165. Defendant Tufts breached its contract with Plaintiff when Dr. Thorley-Lawson failed to adhere to numerous provisions of the Student Handbook regarding his duties as her research advisor, including but not limited to his commitments to mentor her; to plan, direct, set

reasonable and attainable goals, and establish a timeline for completion of the project; to not require her to perform tasks that are unrelated to her training program and professional development; to work with her to publish her work in a timely manner; and to provide an environment that is intellectually stimulating, emotionally supportive, safe, and free of harassment.

166. Defendant Tufts further breached its contract with Plaintiff by failing to adhere to the Immunology Program Guidelines, including the requirement that all TAC members (including Dr. Thorley-Lawson) be present during the August 2016 TAC meeting, and by applying those guidelines in an arbitrary and capricious manner.

167. Defendant Tufts further breached its contract with Plaintiff by failing to adhere to the Complaint Resolution Guidelines in addressing her complaint of sexual and gender-based discrimination by failing to provide a thorough, impartial, and effective process; refusing to provide Plaintiff with effective interim measures to ensure that she would not be deprived of her educational opportunities while Tufts investigated her discrimination complaint; by taking more than 200 calendar days and more than 130 business days to complete the discrimination investigation when the policy provides for a 60-day investigation (the policy is unclear as to whether it is 60 business or 60 calendar days); and by purportedly issuing a final decision regarding the discrimination investigation without providing the investigators' conclusions and an opportunity to respond to them. Tufts applied the Complaint Resolution Guidelines to Plaintiff's complaint in an arbitrary and capricious manner.

168. Defendant Tufts further breached its contract with Plaintiff by retaliating against her after she filed her complaint, in violation of its policies prohibiting retaliation.

169. As a direct and proximate cause of Defendant Tufts' breaches of contract set forth above, Plaintiff was removed from Dr. Thorley-Lawson's laboratory and has been prevented from publishing her manuscript, obtaining permission to defend her thesis, and earning her Ph.D.

170. Plaintiff has suffered damages as a result of Defendant's Tufts breaches, including substantial delay or loss of her Ph.D., lost job opportunities, and lost future wages.

**COUNT V**
**<u>Breach of the Covenant of Good Faith and Fair Dealing</u>**

171. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

172. Plaintiff's contractual relationship with Defendant Tufts contains within it an implied covenant of good faith and fair dealing.

173. Defendant Tufts breached that covenant by failing to execute its obligations under its policies with good faith.

174. Defendant Tufts permitted Dr. Thorley-Lawson to "disengage" from Plaintiff and remove her from his laboratory for "personal" reasons without following its own policies and procedures, or any process whatsoever.

175. Defendant Tufts rubber-stamped the improper process the TAC Committee and Dr. Thorley-Lawson followed in August 2016, including the TAC's refusal to provide Plaintiff with her TAC form before its submission and Dr. Thorley-Lawson's abrupt decision to remove Plaintiff from his laboratory and stop working with her.

176. Defendant Tufts therefore deprived Plaintiff of her right to work with her adviser to address the TAC form as set forth in the Immunology Program Guidelines, deprived her of any access to the laboratory to conduct any new experiments set forth in the TAC form, and deprived her of authorship of her manuscript, which required Dr. Thorley-Lawson's agreement to sign on as a co-author.

177. Furthermore, Defendant Tufts' execution of an internal Title IX investigation was a sham meant to protect Dr. Thorley-Lawson and Tufts from responsibility for Dr. Thorley-Lawson's discriminations and harassment.

178. Upon information and belief, Defendant Tufts, by and through its administrators, have delayed and unfairly and improperly influenced the outcome of the Title IX investigation to ensure that both Tufts and Dr. Thorley-Lawson would not be found in violation of Tufts' anti-discrimination policies.

179. As a direct and proximate cause of Defendant Tufts' actions, Plaintiff has been prevented from obtaining the education she is owed under contract.

180. Plaintiff has suffered damages as a result of Defendant's Tufts breach of the covenant of good faith and fair dealing, including substantial delay or loss of her Ph.D., lost job opportunities, and lost future wages.

## COUNT VI
## Negligent Supervision, Training, and Retention

181. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

182. Defendant Tufts owed Plaintiff a duty of care in the retention, supervision, and training of its employees to ensure that she and all of its students are protected from sexual harassment and discriminatory treatment.

183. Defendant Tufts breached that duty when, knowing that Dr. Thorley-Lawson had engaged in inappropriate, harassing, and discriminatory conduct towards his female students over the course of many years, it retained him as a professor and failed to provide him appropriate training or supervision to prevent him from continuing to mistreat female students.

184. As a direct and proximate result of Tufts' breach of its duty of care, Plaintiff was sexually harassed and subjected to a sexually hostile educational environment by Dr. Thorley-Lawson.

185. Plaintiff has suffered damages as a result.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

2. Award Plaintiff the reasonable costs and expenses of this action and reasonable legal fees as provided by applicable law;

3. Award Plaintiff all other damages as permitted by applicable law;

4. Grant all such other relief, including injunctive relief, as this Court deems equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,
NICOLE CASTAGNOZZI,
By her attorneys,


By: _____/s/ Monica Shah_____

MONICA SHAH (Mass. Bar. No. 664745)
NAOMI SHATZ (Mass. Bar. No. 677637)
ZALKIND DUNCAN & BERNSTEIN LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020 (telephone)
(617) 742-3269 (fax)
mshah@zalkindlaw.com
nshatz@zalkindlaw.com